47 F.3d 1170
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kelly Lorenzo BYRD, Jr., Defendant-Appellant.
 No. 94-5301.
 United States Court of Appeals, Sixth Circuit.
 Feb. 21, 1995.
 
 Before: JONES and MILBURN, Circuit Judges; and COHN,* District Judge.
 MILBURN, Circuit Judge.
 
 
 1
 Defendant Kelly Lorenzo Byrd, Jr. appeals the denial of his motion to suppress evidence and his subsequent conviction following a conditional guilty plea to possession of crack cocaine with intent to resale in violation of 21 U.S.C. Sec. 841(a)(1) and possession of a firearm during and in relation to a drug-trafficking crime in violation of 18 U.S.C. Sec. 924(c). On appeal, the issues are (1) whether the initial stop of defendant was a legal investigatory stop, (2) whether Officer Tilley exceeded the scope of an investigatory stop, (3) whether the warrantless search of defendant's automobile violated the Fourth Amendment, and (4) whether the stop of defendant was pretextual. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 On January 25, 1993, at approximately 3:30 a.m., Officer Michael Tilley of the Chattanooga Police Department was on routine patrol in the 2900 block of South Hickory Street in Chattanooga, Tennessee, when he saw a car parked in the middle of the street. Officer Tilley also observed a known prostitute approach the car and lean into the passenger side window to talk to the driver of the car. Earlier that evening, Officer Tilley had warned this woman to "get off the streets." J.A. 14. In order to investigate the possible crimes of prostitution and patronizing prostitution, Officer Tilley pulled his police car behind defendant's car and turned his overhead blue lights on. At that time, the woman began walking toward the police car.[1] Defendant got out of his car and walked to Officer Tilley's police car. At Officer Tilley's request for identification, defendant gave Officer Tilley his driver's license.
 
 
 3
 Officer Tilley asked the police dispatcher to check the validity of defendant's driver's license, and the dispatcher informed Officer Tilley that defendant's license had been suspended. In accordance with his normal practice, Officer Tilley arrested defendant for driving on a suspended license. Meanwhile, Officer Adrian Gibb, also a patrolman with the Chattanooga Police Department, arrived to provide back up for Officer Tilley.
 
 
 4
 After arresting defendant, Officer Tilley explained to defendant that he had the option of having his car parked and locked at the scene or having the vehicle towed. In addition, Officer Tilley gave defendant a standardized form used by the Chattanooga Police Department indicating these options. Defendant chose to have his car parked and locked and indicated this on the form, which he signed. The form stated that defendant released the Chattanooga Police Department and Officer Tilley from all liability concerning defendant's vehicle, including its contents.
 
 
 5
 At that time, Officer Gibb parked defendant's car and conducted an inventory search of the vehicle pursuant to Chattanooga Police Department policy. The standardized form signed by defendant included a space for the officer to list all inventory found in an arrested party's car. Officer Gibb first searched the glove compartment of defendant's car and found a loaded .25 caliber automatic pistol. Next to the gun, he saw empty cigarette packs in which he discovered a quantity of crack cocaine. Officer Gibb completed the inventory of the car and listed its contents as a bag of chips and a pound of sugar. At the suppression hearing, Officer Gibb testified that he did not remember whether he searched the trunk of defendant's car. At jail, an inventory of defendant's personal effects revealed that defendant had $606 in cash wadded in the pocket of his pants.
 
 B.
 
 6
 On May 25, 1993, Byrd was charged in a two-count indictment. Count one charged defendant with possession of crack cocaine with intent to resale in violation of 21 U.S.C. Sec. 841(a)(1). Count two charged defendant with possession of a firearm during and in relation to a drug-trafficking crime in violation of 18 U.S.C. Sec. 924(c). On October 20, 1993, defendant filed a motion to suppress the evidence taken from his car during the warrantless search; namely, the gun and the crack cocaine. The district court held a hearing on this motion on October 29, 1993. On November 1, 1993, the district court denied the motion upon finding that the search of defendant's car was a valid inventory search "made in good faith, not as a pretext for a rummaging type search." J.A. 69. Subsequently, defendant pleaded guilty to both counts in the indictment, pursuant to a conditional plea agreement in which defendant retained the right to appeal the denial of his motion to suppress. On February 7, 1994, defendant was sentenced to 60 months imprisonment on each count, which is to be served consecutively. This timely appeal followed.
 
 II.
 A.
 
 7
 Defendant argues that the district court erred in denying his motion to suppress the gun and crack cocaine taken from his car because Officer Tilley's initial stop of defendant was an unreasonable seizure of defendant in violation of the Fourth Amendment. When reviewing the denial of a motion to suppress evidence in this court
 
 
 8
 we must consider the evidence in the light most favorable to the government. A district court's "denial of a motion to suppress will be affirmed on appeal if proper for any reason[,]" even one not relied upon by that court. Moreover, "[w]e must accept the findings of fact upon which the district court relied in dealing with suppression of evidence unless those findings are clearly erroneous." The ultimate determinations as to the legality of the stop and the existence of probable cause to search the vehicle are conclusions of law, which we review de novo.
 
 
 9
 United States v. Garza, 10 F.3d 1241, 1245 (6th Cir.1993) (citations omitted).
 
 
 10
 "The Fourth Amendment prohibits unreasonable searches and seizures." United States v. Obasa, 15 F.3d 603, 606 (6th Cir.1994). However, a brief investigative stop, or Terry stop, by an officer who is able to point to " 'specific and articulable facts' " justifying his or her reasonable suspicion that the suspect has been or is about to be involved in criminal activity is not an unreasonable seizure. United States v. Sokolow, 490 U.S. 1, 12 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)). While "the Fourth Amendment requires that the decision to stop the individual be based on something 'more substantial than inarticulate hunches[,]' ... 'the totality of the circumstances--the whole picture--must be taken into account' " in determining the validity of a challenged stop. United States v. Roberts, 986 F.2d 1026, 1029 (6th Cir.) (quoting Terry, 392 U.S. at 22) (quoting United States v. Cortez, 449 U.S. 411, 417 (1981), cert. denied, 455 U.S. 923 (1982)), cert. denied, 114 S.Ct. 271 (1993).
 
 
 11
 In this case, Officer Tilley clearly had reasonable suspicion to stop defendant. Officer Tilley observed defendant's car stopped in the middle of the street around 3:30 a.m. He also saw a known prostitute approach the car and lean into the passenger side window in order to talk to defendant. In addition, Officer Tilley had warned the prostitute to "get off the streets" earlier that evening. Based on these facts, the district court found that Officer Tilley had reasonable suspicion to think that defendant was involved "in either a prostitution offense or possibly a traffic offense because he was parked right in the middle of the road." J.A. 66. We agree. Therefore, we conclude that the district court's finding that Officer Tilley had a reasonable suspicion that defendant was involved in criminal activity and thus was justified in stopping defendant was not clearly erroneous. Moreover, parking in the middle of the street is probably a traffic violation for which there would be probable cause to arrest. See United States v. Ferguson, 8 F.3d 385, 391 (6th Cir.1993) (en banc), cert. denied, 115 S.Ct. 97 (1994).
 
 B.
 
 12
 Defendant argues that Officer Tilley exceeded the scope of an investigative stop by checking the validity of defendant's driver's license, thus making his arrest illegal. Defendant notes that at the suppression hearing, Officer Tilley testified that the reason he stopped defendant was to investigate "the possibility of prostitution and patronizing prostitution." J.A. 14. Therefore, defendant asserts that Officer Tilley was limited to asking a few questions about the crime of patronizing prostitution and because Officer Tilley requested a check on defendant's driver's license, a seizure occured that violated defendant's Fourth Amendment rights.
 
 
 13
 To review the legitimacy of an investigatory stop, we must determine " 'whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances.' " Garza, 10 F.3d at 1245 (quoting United States v. Hardnett, 804 F.2d 353, 356 (6th Cir.1986), cert. denied, 479 U.S. 1097 (1987)). Thus, "[t]he scope of activities permitted during an investigative stop is determined by the circumstances that initially justified the stop." Obasa, 15 F.3d at 607; United States v. Sharpe, 470 U.S. 675, 682 (1985). In this regard, a police " 'officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions' " during an investigatory stop. Obasa, 15 F.3d at 607 (quoting Berkemer v. McCarty, 468 U.S. 420, 439 (1984)). Further, the Supreme Court has stated that there is no "litmus-paper test ... for determining when a seizure exceeds the bounds of an investigative stop." Florida v. Royer, 460 U.S. 491, 506 (1983). The Court has also held that although investigative stops must be brief, there can be no rigid time limit for a permissible Terry stop. Sharpe, 470 U.S. at 685-86. Therefore, we must determine "whether the detention and investigative methods used were reasonable under the circumstances." United States v. Winfrey, 915 F.2d 212, 216 (6th Cir.1990), cert. denied, 498 U.S. 1039 (1991).
 
 
 14
 In this case, Officer Tilley had a reasonable suspicion that defendant was engaged in criminal activity. In this connection, he asked defendant for identification, and defendant gave him his driver's license. It was not beyond the scope of this investigatory stop for Officer Tilley to check the validity of defendant's driver's license. Officer Tilley was verifying defendant's identity. Defendant argues that Officer Tilley could only question defendant regarding the possible prostitution crime, but he could not retain defendant's driver's license and check its validity. However, it was in the process of checking defendant's identity, while investigating the prostitution offense, that Officer Tilley discovered that defendant was driving with a suspended license.
 
 
 15
 Defendant cites no authority that prohibits police officers from requesting a detainee's driver's license or checking the validity of that license during an investigatory stop. Moreover, defendant relies on cases from other circuits in which the police detained the defendants after traffic violations due to suspicions that the automobiles contained drugs. See, e.g., United States v. Walker, 941 F.2d 1086 (10th Cir.1991), cert. denied, 112 S.Ct. 1168 (1992); United States v. Recalde, 761 F.2d 1448 (10th Cir.1985); United States v. Rodriguez, 737 F.Supp. 85 (M.D.Ga.1990). In contrast, in this case, Officer Tilley checked the validity of defendant's driver's license to verify defendant's identity during his investigatory stop. Thus, Officer Tilley's inquiry, unlike those in the cases that defendant cites, was related to the original purpose for which he stopped defendant. Accordingly, we hold that Officer Tilley did not exceed the scope of an investigatory stop.
 
 C.
 
 16
 Defendant also argues that the search of his car was not a valid inventory search and thus was illegal. It is well established that law enforcement officers may make a warrantless search of a legitimately seized vehicle provided that the inventory is conducted according to standardized criteria or established routine. Colorado v. Bertine, 479 U.S. 367, 374 n. 6 (1987); South Dakota v. Opperman, 428 U.S. 364, 372 (1976); Florida v. Wells, 495 U.S. 1, 4 (1990). However, the inventory cannot be taken as a pretext to conceal an investigatory police motive. Opperman, 428 U.S. at 376; Bertine, 479 U.S. at 376. The requirement that inventory searches be governed by standardized criteria or established routine ensures that they are not used as "a ruse for a general rummaging in order to discover incriminating evidence." Wells, 495 U.S. at 4.
 
 
 17
 Defendant argues that the police must impound an automobile before they can conduct a valid inventory search of that automobile absent special circumstances and asserts that the search of his car was illegal because the police did not impound his car. On the other hand, the government argues that defendant's car was impounded "for all practical purposes in that it was in temporary police control during the period preceding its retrieval by the arrested driver or his agent, a time during which police bore a responsibility to the public and the owner to provide security and safety." Appellee's Brief at 4 n. 1. We disagree. The police required defendant to sign a form that released the police from liability for his car and its contents. Moreover, the police did not agree to monitor defendant's car or control who retrieved the car. Therefore, we conclude that defendant's car was not in police custody.
 
 
 18
 When the police park and lock an arrestee's car, as they did in this case, they do not take responsibility for its protection from vandalism or theft. This is evidenced by the standardized form that defendant signed, which indicated that he chose to have his car parked and locked instead of impounded and which released the Chattanooga Police Department and the arresting officer from liability for the contents of his car. Thus, we hold that the governmental interests served in conducting an inventory search of defendant's car, which was not in police custody, do not justify the intrusion into defendant's Fourth Amendment privacy rights. See United States v. Brown, 787 F.2d 929, 931-32 (4th Cir.), cert. denied, 479 U.S. 837 (1986) ("For an inventory search to be valid, the vehicle searched should first be in the valid custody of the law enforcement officers conducting the inventory."); Caplan v. Florida, 531 So.2d 88, 90 (Fla.1988) ("[T]here is no need to perform the caretaking function of an inventory when the vehicle is not in the care, custody, and control of the police."), cert. denied, 489 U.S. 1099 (1989). Accordingly, we conclude that the warrantless search of defendant's car was not a valid inventory search.[2]
 
 
 19
 Therefore, we must next determine if the search was justified under any other exception to the Fourth Amendment warrant requirement. See United States v. Patterson, 993 F.2d 121, 122-23 (6th Cir.1993) (per curiam) (holding that the warrantless search of the defendant's automobile was a valid search incident to arrest although the district court found that the search was an inventory search). Defendant argues that the search cannot be justified as incident to defendant's arrest because defendant was not an occupant of his car when he was arrested.
 
 
 20
 In New York v. Belton, 453 U.S. 454, 460 (1981), the Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." This court has held that " '[A] police officer may search the passenger compartment of an automobile incident to the lawful custodial arrest of the occupant of the vehicle without a warrant or probable cause. This is so even if the arrestee has been separated from [the vehicle] prior to the search of the passenger compartment.' " United States v. Thomas, 11 F.3d 620, 628 (6th Cir.1993) (quoting United States v. Mans, 999 F.2d 966, 968 (6th Cir.1993)) (citations omitted), cert. denied, 114 S.Ct. 1570 and cert denied, 114 S.Ct. 1571 (1994).
 
 
 21
 Defendant argues that his arrest was illegal. In addition to defendant's argument that Officer Tilley lacked reasonable suspicion to stop defendant and exceeded the scope of an investigatory stop by checking the validity of his driver's license as discussed above, defendant also argues that his arrest violated Tennessee law. Specifically, defendant asserts that Tennessee Code Annotated ("T.C.A.") Sec. 40-7-118 requires a police officer to use a citation in lieu of continued custody of a person arrested for a misdemeanor, unless certain requirements are met; if a citation is not issued, the police officer must note the reason on the arrest ticket. Defendant notes that Officer Tilley did not state any reason for taking him into custody instead of giving defendant a citation on defendant's arrest ticket. However, a review of the statute shows that an officer has discretion to determine whether to issue a citation except in certain circumstances. In those circumstances, the officer must take the arrestee into custody and note the reason on the arrest ticket. However, this requirement does not apply if the arrest was discretionary, as it was in this case. Moreover, where, as here, the defendant was driving on a suspended license, a citation in lieu of an arrest would not have been proper. Therefore, we conclude that Officer Tilley did not violate T.C.A. Sec. 40-7-118.
 
 
 22
 Defendant also argues that Officer Tilley violated Tennessee law by requesting to see defendant's driver's license although he was not investigating a moving violation. Defendant asserts that pursuant to T.C.A. Sec. 55-50-351, only a state patrol officer may demand to see a person's driver's license where the request is not made in connection with the operation of a motor vehicle and that, in this case, the request was made in connection with a prostitution investigation. However, a review of the transcript of the suppression hearing shows that Officer Tilley did not demand to see defendant's driver's license; he asked defendant for identification, at which time defendant gave Officer Tilley his driver's license. J.A. 15. Officer Tilley clearly was entitled to verify defendant's identity during his investigatory stop. Obasa, 15 F.3d at 607; Berkemer, 468 U.S. at 439. Therefore, we hold that defendant's arrest for driving on a suspended license was legal.
 
 
 23
 Defendant argues that Belton does not apply to this case because defendant was not an occupant of his car when he was arrested. In support of this contention, defendant cites United States v. Strahan, 984 F.2d 155 (6th Cir.1993). However, defendant's reliance on Strahan is misplaced. In Strahan, the defendant had walked 30 feet away from his car before he was stopped by the police and subsequently arrested. Thus, we stated in Strahan that Belton "applies only where police initiate contact while the defendant is within his automobile, but subsequently remove the arrestee." Id. at 159 (emphasis added). Therefore, Strahan does not hold that Belton only applies if a defendant is arrested while he is in a car as defendant asserts; rather, Strahan holds that Belton controls when a defendant is in a car when police initially stop him. In this case, defendant was in his car when Officer Tilley pulled his police car behind defendant and turned on his overhead blue lights. At that time, defendant got out of his car to walk to the police car. Clearly, defendant was in his car at the time the police initiated the contact with him that led to his arrest for driving on a suspended license. Thus, we conclude that the search of his automobile was justified as incident to his arrest.
 
 
 24
 Defendant also argues that absent exceptional circumstances, a vehicle may not be searched incident to an arrest of an individual for a traffic offense. This court addressed this issue in United States v. Pino, 855 F.2d 357 (6th Cir.1988), cert. denied, 493 U.S. 1090 (1990). In Pino, we held that the police may search a car incident to an arrest for a traffic violation if the search is subject to a lawful, custodial arrest, as it was in this case. Id. at 363-64. Accordingly, we hold that defendant's motion to suppress was properly denied because the search of defendant's car was a valid search incident to an arrest. Thus, although we hold that the district court erred in finding that the warrantless search of defendant's car was a valid inventory search, we agree with the result reached by the district court, albeit for different reasons. See Hilliard v. United States Postal Serv., 814 F.2d 325, 326 (6th Cir.1987).
 
 D.
 
 25
 Finally, defendant argues that the stop and search were pretextual and therefore illegal. Defendant argues that this case is distinguishable from United States v. Ferguson, 8 F.3d at 391-92, in which we held that a traffic stop is not pretextual if the police officer had probable cause to believe that a traffic offense had occurred. Defendant asserts that Ferguson does not apply to this case because the stop at issue in this case was based on reasonable suspicion of a nontraffic offense, i.e., patronizing prostitution. Instead, defendant relies on United States v. Smith, 799 F.2d 704, 709 (11th Cir.1986), which held that in determining when an investigatory stop is unreasonably pretextual, the proper inquiry is whether under the same circumstances a reasonable officer would have made the stop in the absence of the invalid purpose. We find defendant's argument unpersuasive. We rejected the Smith test in Ferguson, and we will not apply it in this case. Ferguson, 8 F.3d at 391.
 
 
 26
 In this case, the district court found that Officer Tilley had reason to "suspect that the Defendant was involved in either a prostitution offense or possibly a traffic offense because he was parked right in the middle of the road." J.A. 66. As discussed above, Officer Tilley had a reasonable suspicion to stop defendant. Therefore, we hold that defendant's stop was legal, and the district court did not err in denying defendant's motion to suppress.
 
 III.
 
 27
 For the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The woman was later arrested for prostitution
 
 
 [2]
 Because we hold that the search of defendant's car was not a valid inventory search because defendant's car was not in police custody, we do not reach the other arguments defendant put forth regarding the validity of the inventory search. Those arguments included that the search was not a valid inventory search because Tennessee state law prohibited the search; that the government failed to show that the search was conducted according to standardized criteria or established routine; and that the inventory search was conducted solely as a pretext to discover evidence of crime