NOT RECOMMENDED FOR PUBLICATION
File Name: 05a0949n.06
Filed: December 5, 2005

No. 04-6142

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF KENTUCKY |
| DERRICK L. GREEN, | ) | |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

**Before: CLAY and SILER, Circuit Judges; and CARR, District Judge.[1]**

**JAMES G. CARR, DISTRICT JUDGE.** This is an appeal from the defendant's conviction on two counts of possession of drugs with the intent to distribute. The defendant appeals the: 1) denial of his motions to exclude testimony and suppress evidence; 2) sufficiency of the evidence to sustain his conviction; and 3) imposition of consecutive sentences on revocation of his supervised release for another offense after he was convicted of the crimes charged in this case.

For the reasons that follow, we **AFFIRM** the denial of the defendant's motions and his conviction, and we **REVERSE** the sentence imposed on revocation of supervised release and **REMAND** for resentencing.

**Background**

---

[1] The Honorable James G. Carr, Chief Judge of the Northern District of Ohio, sitting by designation.

On February 10, 2004, at about 2:45 a.m., Officer Matthew Sharp of the Lexington, Kentucky, Police Department saw a woman leaning close to the passenger side of a car that had stopped in an area known for drug trafficking and prostitution. As Officer Sharp approached the vehicle in his marked police cruiser, the woman left abruptly and the vehicle began to creep forward. Then it quickly pulled off the road and on to the sidewalk. Officer Sharp concluded, based on his experience and knowledge of the area, that the woman may have been soliciting prostitution.

Officer Sharp approached the car. The defendant Derrick Green, who at the time was on supervised release after serving a 120 month sentence in federal custody, was seated on the front passenger seat.

On being questioned by Officer Sharp, the defendant stated that he and the driver had asked the woman for a ride.

The driver stated, in contrast, that they had been asking the woman for directions.

When the officer asked the defendant how he knew the driver, he said that they were friends and had been hanging out all day.

The driver, in contrast, said that the defendant had just called and asked for a ride to the Richmond Road area.

The defendant had become visibly nervous and agitated. Officer Sharp, concerned about the defendant's behavior, asked another officer to check the defendant for weapons. Patting the defendant down, that officer did not feel any weapons; he did, however, feel a large bulge in the defendant's front shirt pocket.

The officers asked to see what was in the pocket. The defendant pulled out a piece of paper wrapped around an object somewhat smaller than a golf ball. After pausing, the defendant began to run away.

The defendant ran about seventy yards before Officer Sharp caught him and took him to the ground. Once down, the defendant sought to conceal his hands under his body.

Officer Sharp asked to see the defendant's hands, but he kept them concealed.

While struggling with the officers, the defendant had tossed away several bags or packages. These were later determined to contain drugs. An officer walked back toward the car and found another item that the defendant had apparently discarded while attempting to flee.

Examination determined that the defendant had thrown away 4.04 grams of crack cocaine and 220.68 grams of cocaine as he was running, and 17.69 grams of crack cocaine while struggling with the officers. These quantities are inconsistent with possession merely for personal use.

The jury found the defendant guilty as charged with possession of crack cocaine (Count I) and cocaine (Count II), both with the intent to distribute.

## Discussion

### I. Evidence of Defendant's Prior Convictions

Prior to the defendant's trial, the government served notice of its intent to offer evidence of the defendant's prior conviction under RuleS 404(b) and 609(a) of the Federal Rules of Evidence. The government later stated that it would not offer that evidence in its case in chief, and would seek to do so only if the defendant testified. The defendant did not testify, so the government never offered that evidence.

3

The defendant, not having had this evidence introduced at trial, is not entitled to reversal on this assignment of error.

## II.  Motion to Suppress

A brief investigative stop, or *Terry* stop, by an officer able to point to "'specific and articulable facts'" justifying reasonable suspicion that the suspect has been or is about to be involved in criminal activity can be reasonable under the Fourth Amendment.  *See generally United States v. Sokolow*, 490 U.S. 1, 12, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (*quoting Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).  An officer may not, however, rely simply on an inarticulate hunch: "'the totality of the circumstances--the whole picture--must be taken into account'" when assessing the lawfulness of an investigatory stop.  *United States v. Roberts*, 986 F.2d 1026, 1029 (6th Cir. 1993) (*quoting Terry*, *supra*, 392 U.S. at 22, 88 S.Ct. 1868).

Among the circumstances that an officer may consider are the nature of the area and hour at which the activity is taking place. *See United States v. Arvizu,* 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (stop lawful after Border Patrol agents' observed defendant's crowded van, of a type used for smuggling illegal immigrants, in a remote area at a time of day when illegal entry often is attempted); *United States v. Martin*, 289 F.3d 392, 398-99 (6th Cir. 2002) (stop of vehicle lawful after officers saw woman, attired like a prostitute in an area known for prostitution, beckon to car's occupants and get into the vehicle); *United States v. Byrd*, 1995 WL 72299, *1 (6th Cir. Feb. 21, 1995) (Unpublished disposition) (stop lawful where an officer observed a known prostitute approach a vehicle stopped in the middle of the street and lean in the window; incident occurred at 3:30 a..m.).

We conclude there was a reasonable basis for Officer Sharp to conclude that he had observed solicitation for prostitution, given what he saw and where and when he saw it. A solitary female might lawfully pause and lean toward the window of a stopped vehicle at 2:45 a.m. in an area known for drug trafficking and prostitution, and then decide to walk away as a squad car approached; but that possibility is so slight that a reasonable police officer encountering that situation can properly conclude that something illegal (most likely solicitation for prostitution) is afoot.

We also conclude that the scope of the stop was lawful. Once officers have a lawful basis to detain an individual, they may ask the individual a moderate number of questions to determine the individual's identity and confirm or dispel their suspicions about the possible unlawfulness of his activities. *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Where the officer receives inconsistent answers from a visibly nervous suspect, his reasonable suspicion that criminal activity may have been occurring is hardly dispelled. *See United States v. Hill*, 195 F.3d 258, 271-72 (6th Cir.1999) (inconsistent answers to questions and nervous demeanor can contribute to reasonable suspicion).

The next step – checking the defendant for weapons – was also lawful. While conducting a *Terry* stop an officer may, to ensure his own safety and that of others, conduct a limited pat-down search for weapons. *United States v. Butler*, 223 F.3d 368, 374 (6th Cir.2000). Before Officer Sharp asked the defendant to get out of the car, the officer's suspicions about what he had seen before approaching the car had increased, rather than diminished. For his own safety, particularly in the area in which the encounter occurred, a pat-down search was permissible.

While the search was occurring, the officer felt a bulge in the defendant's pocket. When, after the defendant had given the item to the officer at the officer's request, he began to run away,

5

the officers could pursue and restrain him. *See United States v. Dotson*, 49 F.3d 227, 230-31 (6th Cir.1995) (officer's use of physical force to restrain defendant who attempted to flee from traffic stop was reasonable); *United States v. Haye*, 825 F.2d 32, 35 (4th Cir.1987) (officer may use force to stop a suspect from fleeing during a lawful *Terry* stop).

The drugs found near the defendant and thrown by him along the path he took during his attempted flight and ensuing struggle with the officers were lawfully seized. By discarding the drugs, the defendant disclaimed and renounced any ownership interest in them, and left them free for others to recover. When the officers picked them up, they did not violate the defendant's Fourth Amendment rights or his legitimate expectation of privacy. *See, e.g.*, *United States v. Collis*, 766 F.2d 219, 222 (6th Cir.1985) (defendant's heaving a shoulder bag over a fence while the police pursued him constituted abandonment).

Thus, we affirm the district court's ruling on the defendant's motion to suppress.

### III. Sufficiency of the Conviction

In view of the quantity of drugs possessed by the defendant and the circumstances of their seizure, the jury could properly find that the defendant "(1) knowingly; (2) possessed a controlled substance; (3) with the intent to distribute" the drugs. No more is needed to sustain the conviction, *see, e.g., United States v. Gibbs*, 182 F.3d 408, 424 (6th Cir. 1999), except to note that the defendant's intent to distribute the drugs to others, rather than to keep them for his own use, can reasonably be inferred from their quantity. *See United States v. Jackson*, 55 F.3d 1219, 1226 (6th Cir. 1995).

### IV. Sentencing

6

After the District Judge sentenced the defendant to 130 months (the low end of the Guideline range) for the crimes of conviction, he considered revocation of the defendant's supervised release. The defendant's attorney asked that the sentence to be imposed for violation of supervised release be concurrent with the sentence for his new crimes.

In response to this request, the District Judge paraphrased § 7B1.3(f) from U.S. Sentencing Guideline Manual, stating:

> Section 7B1.3(f) states, "Any term of imprisonment imposed upon the revocation of supervised release shall be ordered to serve consecutively to any sentence of imprisonment the defendant is serving whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation of supervised release."

(J.A. 145).[2]

After reciting this provision, the Judge stated, "Precisely what it says. It's got to be served consecutively." The judge thereon imposed a term of thirty months for violation of supervised release, to be served consecutively to the 130 month term. (*Id.*).

Believing that the provisions of Chapter 7, including § 7B1.3(f), were mandatory was erroneous. Chapter Seven of the Federal Sentencing Guidelines Manual sets forth policy statements,

---

[2] The Judge's recitation was in part misread. The text of § 7B1.3(f) is:

> Any term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release.

not Guidelines. *See* U.S.S.G. § 7A1 ("At this time the Commission has chosen to promulgate policy statements only."). As a result, Chapter 7 gives a court the discretion, not only to determine whether to impose a term of imprisonment following revocation, but also to have its sentence, if it imposes one, run concurrently or consecutively.

This court has previously held that treating the provisions of Chapter 7 as leaving a district court without discretion to impose a post-revocation sentence concurrently is reversible error requiring remand for resentencing. *See United States of America v. Sparks*, 19 F.3d 1099, 1101 (6th Cir. 1994) (a district court "must consider, but need not necessarily follow, the Sentencing Commission's recommendations regarding post-revocation sentencing."); *United States v. Cohen,* 965 F.2d 58 (6th Cir.1992) ( the "policy statements in § 7B1.4 of the Guidelines are not binding upon the district court, but must be considered by it in rendering a sentence for a violation of supervised release.").

In this case the District Judge could have imposed a concurrent sentence for the violation of supervised release. He did not do so because he believed, reading the language of § 7B1.3(f) literally and without regard to § 7A1, that he had no alternative.

On remand the District Judge may impose the sentence for violation of supervised release concurrently or consecutively.

## CONCLUSION

We **AFFIRM** the trial court's ruling on the defendant's motion to suppress and his conviction. We **REVERSE** the trial court's decision to impose its post-revocation sentence consecutively and **REMAND** for resentencing.

8