**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0421n.06

No. 11-5999

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Apr 16, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| RAUL PEREZ, | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | **O P I N I O N** |
| | ) | |

Before: SUHRHEINRICH, MOORE, and CLAY, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Defendant-Appellant Raul Perez was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On appeal, he challenges the district court's denial of his motion to suppress and the court's application of the statutory armed career criminal sentencing enhancement pursuant to 18 U.S.C. § 924(e)(1). Because the officer who conducted the initial traffic stop had reasonable suspicion to believe that additional criminal activity was afoot, the extended duration of the stop did not render it an unlawful seizure. In addition, the district court correctly applied the armed career criminal sentencing enhancement on the basis of Perez's three prior aggravated-robbery convictions. Accordingly, we AFFIRM the judgment of the district court.

## I. BACKGROUND

Late in the evening of September 4, 2008, Officer David Mundt of the Nashville Metropolitan Police Department observed Perez's vehicle cross the center line and initiated a traffic stop. When Mundt activated his blue lights, he observed a previously unseen passenger, who had been leaning over to the driver's seat, sit up. Mundt approached the vehicle and noticed that Perez's pants zipper was down and his belt was loose. Mundt asked for a driver's license, explained that he had stopped Perez for crossing the center line, and asked what had been going on with the passenger; despite his initial thought that the driver might have been drunk, Mundt noted that Perez did not appear intoxicated. From the ensuing conversation, Mundt learned that Perez had been receiving oral sex from the passenger while he was driving.

Based on this information, Mundt suspected prostitution activity. He spoke to Perez in an attempt to determine how well he knew the passenger and, unsatisfied with Perez's answers, asked the passenger to exit the vehicle and spoke with her while Perez remained inside. Mundt remained suspicious and returned to the vehicle to speak with Perez. By this point, other officers had arrived. Mundt asked if Perez had any weapons or contraband, which Perez denied, and asked if he could search the vehicle. Perez consented to the search and, voluntarily exiting the vehicle, said that Mundt could search him as well. Mundt began to search Perez, who then stated that he was nervous being searched. Mundt informed Perez that he did not have to consent to the search, but Perez stated that the search could continue. Mundt did not find anything illegal on Perez's person. Mundt again asked for permission to search the vehicle, which Perez again gave. Underneath the driver's-side

floormat, Mundt found a nine-millimeter handgun with one round of ammunition in the chamber. Perez was arrested and charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The stop lasted approximately twenty minutes.

Prior to trial, Perez filed a motion to suppress the handgun as evidence obtained through an unconstitutional search and seizure. Perez contended that the initial stop was invalid and that, if it was valid, the detention and the request to search the vehicle were unrelated to the purposes of the initial stop; he further argued that the illegal stop and detention rendered his consent to the search ineffective. The district court denied the motion, concluding that probable cause existed for the initial stop, that the questioning of Perez and the passenger was justified to determine why the vehicle had crossed the center line, and that Perez had consented to the search of the vehicle.

Following the denial of his motion to suppress, Perez pleaded guilty. Over Perez's objection, the district court determined that Perez qualified for the armed career criminal sentencing enhancement under 18 U.S.C. § 924(e)(1) because of three prior aggravated-robbery convictions. Applying the enhancement, the district court sentenced Perez to the mandatory minimum of 180 months of imprisonment and five years of supervised release. Perez timely appealed the sentence and the denial of his motion to suppress.

## II. ANALYSIS

### A. Motion to Suppress

We review the district court's ruling on a motion to suppress under a mixed standard: "'we review the district court's findings of fact for clear error and its conclusions of law *de novo*.'"

*United States v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009) (quoting *United States v. Gross*, 550 F.3d 578, 582 (6th Cir. 2008)). When, as here, the district court denied the motion to suppress, we review the evidence "'in the light most favorable to the government.'" *Id.* (quoting *United States v. Pearce*, 531 F.3d 374, 379 (6th Cir. 2008)). The reasonableness of a seizure under the Fourth Amendment "'is a question of law that we review de novo.'" *United States v. Everett*, 601 F.3d 484, 488 (6th Cir. 2010) (quoting *United States v. Evans*, 581 F.3d 333, 340 (6th Cir. 2009)).

We analyze the reasonableness of a traffic stop under the standards set forth in *Terry v. Ohio* and its progeny. *Everett*, 601 F.3d at 488. The Fourth Amendment requires that a traffic stop, like a *Terry* stop, must be based on reasonable suspicion. *See United States v. Davis*, 430 F.3d 345, 353–54 (6th Cir. 2005). In addition, "'the degree of intrusion [must be] reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances.'" *Id.* at 354 (quoting *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993)).

Accordingly, the police cannot unreasonably extend the scope and duration of an otherwise lawful traffic stop. *See Everett*, 601 F.3d at 488-89; *see also Illinois v. Caballes*, 543 U.S. 405, 407 (2005) ("[A] seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution."). An officer's inquiry into matters unrelated to the initial stop does not unlawfully prolong the encounter so long as the questioning does not "measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009); *see also Everett*, 601 F.3d at 491–96. In addition, an officer may extend a stop

4

beyond what was originally permissible if "something happened *during the stop* to cause the officer to have a reasonable and articulable suspicion that criminal activity is afoot." *Davis*, 430 F.3d at 353 (internal quotation marks and alterations omitted).

On appeal, Perez concedes the legality of the initial stop. He argues only that Mundt unlawfully prolonged the stop; after Mundt determined that Perez had a valid driver's license and was not impaired, Perez contends that Mundt should have issued a citation and allowed Perez to leave. The government counters that all of Mundt's questions were reasonably related to the initial purpose of the stop and, alternatively, that Mundt lawfully extended the stop based on reasonable suspicion acquired during the course of the stop that additional criminal activity was afoot.

### 1. Mundt's Questions Were Unrelated to the Initial Stop

Mundt's questions about prostitution were unrelated to the original purpose of the traffic stop. By Mundt's own account, he determined fairly quickly upon first speaking with Perez that Perez had crossed the center line while "receiving oral sex from the passenger when he was driving." R.79 at 6 (Suppression Hr'g Tr.). At this point, Mundt "started to investigate the stop as a prostitution stop," *id.*; his subsequent questions to Perez and the passenger related to prostitution. The district court's conclusion that Mundt's entire investigation was justified by the need "to determine the exact cause of why the vehicle had crossed the line," *id.* at 22, is thus not supported by the record. The stop was valid because Perez had crossed the center line. Once Mundt determined the reason that Perez crossed the line and Mundt's investigation turned to prostitution,

the continued duration of the stop must have been justified by reasonable suspicion of additional criminal activity.[1]

## 2. Reasonable Suspicion of Additional Criminal Activity

The government contends that, during the course of the traffic stop, Mundt acquired reasonable suspicion that additional criminal activity was afoot. To extend a stop based on reasonable suspicion of additional criminal activity, the officer must point to "specific and articulable facts" supporting his suspicion; he cannot rely solely on an "an ill-defined hunch." *United States v. Richardson*, 385 F.3d 625, 630 (6th Cir. 2004) (internal quotation marks omitted). We look to the totality of the circumstances when determining whether an officer had reasonable suspicion. *Id.* Even with reasonable suspicion, however, the stop "may continue only for so long as it takes the officer to prove or disprove those suspicions." *Davis*, 430 F.3d at 356.

Mundt's initial suspicions of criminal activity were based on the fact that Perez and the passenger were engaged in a sex act in a moving vehicle at 11:00 at night. Mundt believed that these circumstances indicated an act of prostitution. Many of our cases in which a stop was justified based on reasonable suspicion of prostitution activity involved officers observing the driver converse with or pick up a known or suspected prostitute; these encounters tend to occur late at night in areas known for prostitution. *See United States v. Luqman*, 522 F.3d 613, 615, 617 (6th Cir. 2008); *United*

---

[1]The government does not argue that Mundt's questions did not "measurably extend" the duration of the stop under the principles articulated in *Everett*. *See* 601 F.3d at 491–96. Because we conclude that reasonable suspicion of additional criminal activity justified extending the stop, we do not address this possibility.

*States v. Green*, 157 F. App'x 853, 855–56 (6th Cir. 2005) (unpublished opinion); *United States v. Martin*, 289 F.3d 392, 395, 399 (6th Cir. 2002). The officers in *Luqman*, *Green*, and *Martin* did not observe any actual sexual conduct. Although Mundt's suspicions were not based on any prior knowledge of the passenger's identity, he did witness a sex act performed under unusual circumstances. The government does not suggest that North Nashville is an area known for prostitution activity, but the incident did occur at a late hour.

Rather than dispel his suspicions of criminal activity, Mundt's conversations with Perez and the passenger only heightened his suspicions. At the suppression hearing, Mundt testified that he usually asks a suspected prostitute and a suspected customer questions that would enable him to determine how well they knew each other; here, after the passenger left the car, Mundt asked her "basically . . . the normal questions that you would ask to investigate prostitution." R.79 at 9. At the hearing, Mundt could not remember the specific questions he asked Perez or the passenger or the responses they gave but testified that "something that was said led me to the belief that she was—that it was a prostitution act." *Id.* at 15. Mundt only remembered asking her the kinds of questions he would normally ask in the course of a prostitution investigation and not being satisfied with the answers. This lack of particularity gives us some pause; after all, an officer must be able to specify the articulable facts that support his suspicion of criminal activity in order for us to determine whether that suspicion was reasonable. Combined with the fact that Mundt witnessed what he believed was (and what was later confirmed by Perez to be) a sex act and the fact that we review the evidence in the light most favorable to the government, however, we conclude that Mundt

had reasonable suspicion to extend the traffic stop by asking a series of questions related to prostitution but unrelated to the initial stop for crossing the center line.

Mundt's sole other question prior to asking for permission to search the vehicle that was not directly related to either the initial stop or the alleged prostitution was whether Perez had any weapons or anything illegal in the car. An officer with reasonable suspicion of criminal activity "may inquire about dangerous weapons" to ensure his safety, *Everett*, 601 F.3d at 495, especially when, as here, "the officer's suspicions about what he had seen before approaching the car had increased, rather than diminished," *Green*, 157 F. App'x at 856.[2]

Aside from challenging the preceding stop as an unlawful seizure, Perez does not contend that the search of his person and vehicle was invalid. Because the stop was lawful, and Perez consented to the search, the search was valid. The district court properly denied the motion to suppress.

## B. Armed Career Criminal Sentencing Enhancement

Perez challenges the applicability of the statutory armed career criminal enhancement to his sentence. Although he admits to having three prior convictions for aggravated robbery, he contends that two of those convictions should be counted as one predicate offense because they were committed on the same day. We review de novo the district court's ruling that Perez's offenses were committed on different occasions. *United States v. Hill*, 440 F.3d 292, 295 (6th Cir. 2006).

---

[2]Asking about "anything illegal" in addition to weapons did not "measurably extend" the duration of the stop. *See Everett*, 601 F.3d at 495–96.

The Armed Career Criminal Act provides that "a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another" shall face a mandatory minimum sentence of fifteen years of imprisonment. 18 U.S.C. § 924(e)(1). Two offenses are "committed on occasions different from one another," *id.*, if "(1) 'it is possible to discern the point at which the first offense is completed, and the subsequent point at which the second offense begins'; (2) 'it would have been possible for the offender to cease his criminal conduct after the first offense, and withdraw without committing the second offense'; or (3) 'the offenses are committed in different residences or business locations.'" *United States v. Paige*, 634 F.3d 871, 873 (6th Cir. 2011) (quoting *Hill*, 440 F.3d at 297–98). Two offenses are counted separately if any of these tests are met. *United States v. Jones*, —F.3d—, No. 09-6549, 2012 WL 716450, at *4 (6th Cir. Mar. 7, 2012).

The Presentence Investigation Report ("PSR") describes Perez's three aggravated robberies as occurring on January 13, 2003; January 15, 2003 at 2:40 p.m.; and January 15, 2003 at 6:40 p.m. The two January 15 robberies involved different victims and occurred at different locations. At the sentencing hearing, the government presented court documents from each of the convictions and a map showing that the locations of the two January 15 robberies were one-and-a-half miles apart.

Although Perez objected to the application of the sentencing enhancement, he did not object to the underlying facts regarding the convictions that were presented in the PSR. Nor does he contest these facts on appeal.[3]

The two January 15 robberies were "committed on occasions different from one another" because they occurred at different locations. Moreover, the first robbery was completed well before the second robbery commenced four hours later. *Cf. United States v. Brady*, 988 F.2d 664, 665 (6th Cir. 1993) (en banc) (holding that two robberies committed thirty minutes apart were committed on different occasions for § 924(e)(1) purposes). For the same reason, Perez could have decided to end the day's criminal activity after the first robbery; he does not argue that doing so would not have been possible. Accordingly, the district court properly applied the armed career criminal sentencing enhancement based on Perez's three aggravated-robbery convictions.

## III. CONCLUSION

Although for different reasons, we agree with the district court that the traffic stop that ultimately uncovered the firearm that was the basis for Perez's felon-in-possession charge was not an unlawful seizure under the Fourth Amendment. Mundt's reasonable suspicion that Perez was engaging in criminal activity apart from the traffic violation enabled him to extend the duration of

---

[3]In his appellate brief, Perez refers to a report from the probation officer detailing the times and locations of the robberies, which he claims is not properly in evidence. It is unclear what report Perez is referencing. If he means the court documents and the map that the government introduced at the sentencing hearing, these documents were admitted as exhibits without objection from Perez. The probation officer filed an addendum to the PSR several months before the sentencing hearing, but this addendum does not contain any information on Perez's aggravated-robbery convictions that was not already included in the PSR.

the stop by asking questions unrelated to the stop's original purpose. Because the stop was lawful and Perez consented to the search, the district court was correct to deny the motion to suppress. In addition, the district court properly concluded that Perez's three prior aggravated-robbery convictions had occurred on different occasions for purposes of applying the armed career criminal sentencing enhancement. We thus AFFIRM the judgment of the district court.