*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0454p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

―――――――――――

UNITED STATES OF AMERICA,

　　　　　　*Plaintiff-Appellee,*

　　　*v.*

MICHAEL GROSS (07-5971); SHAMONE
WILKINS (07-5972),

　　　　　　*Defendants-Appellants.*

Nos. 07-5971/5972

>

Appeal from the United States District Court

for the Eastern District of Tennessee at Chattanooga.

No. 06-00054—Harry S. Mattice, Jr., District Judge.

Argued: December 4, 2008

Decided and Filed: December 22, 2008

Before: MERRITT, MOORE, and COLE, Circuit Judges.

―――――――――――

**COUNSEL**

**ARGUED:** C. Eugene Shiles, SPEARS, MOORE, REBMAN & WILLIAMS, Chattanooga, Tennessee, Leonard M. Caputo, PHILLIPS, CAPUTO & BROWN, Chattanooga, Tennessee, for Appellants. Robert C. Anderson, Perry H. Piper, ASSISTANT UNITED STATES ATTORNEYS, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** C. Eugene Shiles, SPEARS, MOORE, REBMAN & WILLIAMS, Chattanooga, Tennessee, Leonard M. Caputo, PHILLIPS, CAPUTO & BROWN, Chattanooga, Tennessee, for Appellants. Robert C. Anderson, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge.  Defendants-Appellants Michael Gross and Shamone Wilkins appeal the district court's denial of their motions to suppress evidence obtained by law-enforcement officers during a traffic stop.  The defendants were traveling northbound on Interstate 75 through Hamilton County, Tennessee, when their vehicle, driven by Gross, was pulled over for allegedly straddling lanes in violation of Tennessee law.  After obtaining Gross's consent, the officers searched the vehicle and found a brick of powder cocaine in the trunk, leading to the defendants' arrest and indictment on drug charges.  Each defendant filed a motion to suppress evidence and statements obtained during the search, and the district court denied the motions, finding that the stop was neither unlawful at its inception nor unreasonably prolonged.  The defendants subsequently pleaded guilty to conspiracy to possess with intent to distribute cocaine hydrochloride, but reserved the right to appeal the denial of the motions to suppress.  On appeal, Gross and Wilkins argue that the district court erred in denying their motions to suppress because the search was unlawful for two alternate and independent reasons:  (1) the initial stop was not supported by probable cause and (2) consent to search the vehicle was obtained unlawfully because the stop was unreasonably prolonged.  Because we conclude that the initial stop was unlawful, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

## I.  BACKGROUND

On the afternoon of May 8, 2006, Gross and Wilkins, African-American males ages 24 and 26, respectively, were driving northbound on Interstate 75 through Hamilton County, Tennessee, when they were pulled over by Deputy Henry Ritter of the Hamilton County Sheriff's Office.  During the subsequent search of the vehicle, one kilogram of powder cocaine was found in the trunk of the defendants' vehicle. On May 23, 2006, a federal grand jury indicted the defendants on one count each of possessing with intent to distribute 500 grams or more of a mixture containing cocaine hydrochloride, in violation 21 U.S.C. § 841(a)(1), (b)(1)(B).  A superseding indictment was returned on July 27, 2006, adding a

count for conspiracy to commit the above substantive offense, in violation of 21 U.S.C. § 846, and a count for aiding and abetting each other in committing the above substantive offense.

In June 2006, Gross and Wilkins each filed a motion to suppress evidence and statements collected subsequent to the stop and search of the vehicle, both arguing that there was no lawful basis for stopping the vehicle and that, regardless of the legality of the initial stop, the subsequent search and questioning were unlawful because the purpose of the initial stop had already been completed. After the government filed a response, the district court conducted an evidentiary hearing on the motions, at which Deputy Ritter was the only witness. The government also introduced several exhibits, including a videotape of the stop and two videotapes depicting vehicles traveling the stretch of Interstate 75 on which defendants were stopped. The district court found Deputy Ritter to be a credible witness and summarized his relevant testimony as follows:

> On the afternoon of Monday, May 8, 2006, Officer Ritter was assigned to perform interdiction duties on Highway I-75. Although trained to perform drug interdiction duties, Officer Ritter's interdiction duties involve crimes of all sorts. On that afternoon, Officer Ritter was standing on the shoulder of I-75 North, near the 13-mile marker, talking with Phillip McClain, an officer of the Chattanooga Police Department. During their conversation, Officer Ritter's attention was diverted to a green 2006 Nissan Altima which was traveling northbound on I-75 and which was occupied by two individuals who were later determined to be the Defendants. Officer Ritter testified that his attention was drawn to that particular vehicle because the occupants had leaned back, or were "slouching" in their seats, so that their heads were positioned behind the center post of the vehicle. Officer Ritter stated that this aroused his suspicion because, based on his training and experience, parties sometimes assume such a posture in an attempt to conceal their identities.

> His suspicion thus aroused, Officer Ritter decided to follow the green Nissan Altima, and he caught up to it near the 15-mile marker on I-75 North. This is an area of road near White Oak Mountain where, in an attempt to accommodate the slowing of traffic occasioned by the beginning of a relatively steep ascent, the highway widens from two to three lanes. As he neared Defendants' vehicle, Officer Ritter observed it to "straddle" two lanes of traffic—which he believed constituted a violation of Tennessee Code Annotated § 55-8-123—and he decided to stop it. In order to effectuate the stop, Officer Ritter activated the emergency equipment (*i.e.*, blue lights, etc.) installed in his patrol car, which in turn automatically activated the on-board videotaping equipment. Officer Ritter testified that

after thus signaling the green Nissan Altima to pull over, both vehicles came to a stop on the right shoulder of I-75 North at approximately the 17-mile marker.

. . . .

Officer Ritter stated that, after reviewing the documents which Defendants handed to him, he indicated to Defendants that it appeared to him that they did not know in which lane they were supposed to be driving. He testified that they responded by indicating that they were simply attempting to change lanes.

. . . .

During the search of Defendants' automobile, which was conducted by Officer Ritter and another Sheriff's Deputy, Officer Higdon (who had joined Officers Ritter and McClain at the scene), and assisted by a drug detection dog, Officer Ritter found and seized what was subsequently identified as one kilogram of cocaine hydrochloride which had been concealed in a compartment behind the trunk of the automobile. Following such discovery, both Defendants were placed under arrest, and Officer Ritter, who, as previously noted, had begun to fill out, but did not complete, a warning citation to Defendant Gross with respect to the lane straddling violation, completed a Tennessee Uniform Traffic/Misdemeanor Citation Affidavit of Complaint, introduced as Government Exhibit No. 8, which actually charged Defendant Gross with such violation.

Joint Appendix ("J.A.") at 19-22 (Dist. Ct. Order at 2-5) (footnotes omitted).

Because the on-board video equipment did not begin recording until the emergency signals were activated, there is no videotape of Gross's alleged lane-straddling violation. During Deputy Ritter's testimony, he was questioned specifically about what he observed. Deputy Ritter testified that, as the vehicle approached the mountain where a third lane opens up to the right for trucks and slower traffic, the vehicle was in this far right lane, but then straddled the lane between this lane and the center lane for "as far as if not longer than a football field" while driving sixty to seventy miles per hour. J.A. at 176 (Hr'g Tr. at 18). Deputy Ritter was then asked about two videos: Exhibit 6, which shows a black truck straddling lanes for approximately five seconds while changing from one lane to another, and Exhibit 7, which shows cars traveling on the stretch of Interstate 75 where the road becomes three lanes. Deputy Ritter agreed that the action of the black truck in Exhibit 6 "is basically what [the defendants] did." J.A. at 227 (Hr'g Tr. at 69). He stated that the black truck in the video "appeared to have made a lane change, however, it straddled the line the same

distance, if not more than Mr. Gross's did that day." J.A. at 208 (Hr'g Tr. at 50). Deputy Ritter later testified, however, that Gross's lane straddling was "as far as if not more than that pick-up truck." J.A. at 213 (Hr'g Tr. at 55). Although Deputy Ritter testified that he did not remember the exact number of seconds that either the black truck or the defendants were straddling the lanes, he testified that taking four seconds to change lanes is a traffic violation "[i]f you straddle that lane for a considerable distance," as he claimed the defendants had done. J.A. at 229 (Hr'g Tr. at 71). Deputy Ritter admitted that the defendants were not driving erratically when the dashboard video camera was turned on, and at no point during his testimony did he indicate that he witnessed the vehicle being driven erratically or otherwise improperly.

The district court denied the defendants' motions to suppress, concluding "that the stop of Defendants' vehicle on the afternoon of May 8, 2006, was supported by probable cause, and that the ensuing search of said vehicle and arrest of Defendants were reasonable within the meaning of the Fourth Amendment." J.A. at 29 (Dist. Ct. Order at 12). Regarding the initial stop, the district court found Deputy Ritter had probable cause to believe that a violation of Tenn. Code Ann. § 55-8-128 occurred. The relevant portion of § 55-8-123 provides as follows:

> Whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic, the following rules, in addition to all others consistent herewith, shall apply:
>
>> (1)  A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety . . . .

Tenn. Code Ann. § 55-8-123. The district court found that "[c]ertainly, the movements of Defendants' vehicle which [Ritter] describes fit well within the conduct proscribed by the clear language of the statute." J.A. at 25 (Dist. Ct. Op. at 8). The district court rejected the defendants' argument that no traffic violation had occurred under relevant Tennessee and Sixth Circuit case law:

> While Defendants point to a number of cases in which both Tennessee and federal courts have found no violation of Tenn. Code Ann. § 55-8-123, obviously none of these cases deal with precisely the same set of facts with which Officer Ritter was dealing on the afternoon of May 8,

2006. Accordingly, the cases cited by Defendants are of only limited assistance to the Court in dealing with such a fact-intensive inquiry.

*Id*. Regarding the validity of Gross's consent to search the vehicle, the district court found that the questioning of Gross was not unreasonable and that his consent was given voluntarily because the officers were merely completing the initial purpose of the stop at the time that consent was given.

After the motions to suppress were denied, Gross and Wilkins each entered a conditional guilty plea to the conspiracy charge, but both reserved their rights to appeal the denial of their motions to suppress. Gross was sentenced to the mandatory minimum of 60 months of incarceration, and Wilkins was given the mandatory-minimum sentence of 120 months, which was higher due to a prior drug conviction. The district court entered a judgment in both cases on July 24, 2006, and both defendants now appeal the denial of their motions to suppress.

## II. ANALYSIS

### A. Standard of Review

"When reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law *de novo*." *United States v. Simpson*, 520 F.3d 531, 534 (6th Cir. 2008) (internal quotation marks omitted). "In doing so, we consider the evidence in the light most favorable to the United States." *United States v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000).

### B. Legality of the Stop

"Stopping a vehicle and detaining its occupants amounts to a seizure under the Fourth Amendment." *Id*. (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). Whether the seizure is reasonable is determined by considering first "'whether the officer's action was justified at its inception,' and second 'whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" *Id*. (quoting *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968)). Neither party disputes that if either the initial traffic stop or the scope and duration of the stop was unlawful, the evidence and statements obtained from that illegality must be excluded as "fruit of poisonous tree." *Wong Sun v. United States*, 371 U.S.

471, 488 (1963). Because we conclude that the initial stop was not lawful, we need not consider the legality of the scope and duration of the stop.

The district court erred in finding that Deputy Ritter had probable cause to stop the vehicle, because, viewing the facts in the light most favorable to the government, Deputy Ritter could not have reasonably believed that the defendants' conduct amounted to a violation of Tenn. Code Ann. § 55-8-123. Regardless of the subjective motivations of the officer, "so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful." *Freeman*, 209 F.3d at 466 (quoting *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) (en banc), *cert. denied*, 513 U.S. 828 (1994)); *see also Whren v. United States*, 517 U.S. 806, 813 (1996).[1] "The requirements of probable cause are satisfied where the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005) (internal quotation marks omitted).

We conclude that Deputy Ritter did not have probable cause to believe that a violation of Tenn. Code Ann. § 55-8-123 occurred under the circumstances described in his testimony. What Deputy Ritter described is essentially a slow lane change: the vehicle straddled two lanes for a few seconds while changing from one lane to the other, in an area where the highway began a steep incline and changed from two to three lanes. Without some further allegation of erratic or improper driving, this simply is not within the scope of the statute. Section 55-8-123 does not require vehicles strictly to maintain the lane at all times, but requires that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane." Both this court and the Tennessee courts have found no violation of § 55-8-123, and therefore no probable cause, when a vehicle has veered from its lane but is not otherwise driving erratically. *See, e.g.*, *Freeman*, 209 F.3d at 466

---

[1]We have previously noted that "[t]here is a degree of confusion in this circuit over the legal standard governing traffic stops." *United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007); *see also Simpson*, 520 F.3d at 538-41 (noting that *Freeman* requires probable cause and controls with respect to violations that are not ongoing). We need not address this question, however, because both parties use the probable-cause standard, and neither argues that a lower standard, such as reasonable suspicion, should apply.

(finding no violation of § 55-8-123 and no probable cause when the officer observed "one isolated incident of a large motor home partially weaving into the emergency lane for a few feet and an instant in time"); *State v. Binette*, 33 S.W.3d 215, 220 (Tenn. 2000) (concluding that a vehicle that had crossed the yellow line twice and made a hard swerve did not violate § 55-8-123 and holding that an officer does not have "reasonable suspicion to stop a driver whose driving it found not to be erratic or in any way improper"); *see also State v. Carl Martin*, No. W2002-00066-CCA-R3-CD, 2003 WL 57311, at *4 (Tenn. Crim. App. Jan. 2, 2003); *State v. Ann Martin*, No. E1999-01361-CCA-R3-CD, 2000 WL 1273889, at *6 (Tenn. Crim. App. Sept. 8, 2000). *But see State v. Richie*, No. E2005-02596-CCA-R3-CD, 2007 WL 10449, at *3 (Tenn. Crim. App. Jan. 3, 2007).

Deputy Ritter testified that the vehicle straddled the center lane for at least one hundred yards while changing lanes, which, when traveling at sixty-five miles an hour, amounts to just over three seconds. The truck in Exhibit 6, which, according to Deputy Ritter's testimony, did essentially what the defendants' vehicle did, seems to have straddled the lane for approximately four to five seconds while changing lanes. Gross was changing lanes, while rounding a curve and going up a mountain where the highway increases from two to three lanes, and he was not otherwise driving erratically or improperly. It clearly is not practicable to change lanes without straddling the lanes for some amount of time. Particularly given the Tennessee courts' lenient interpretation of § 55-8-123 where a driver is not driving erratically, we simply cannot conclude that the slow lane change observed by Deputy Ritter amounted to a violation of the statute. We further cannot conclude that the driving witnessed by Deputy Ritter gave him probable cause to believe that a violation occurred. The government urges that probable cause existed because Deputy Ritter believed that Gross's driving constituted a traffic violation. Probable cause, however, requires that the officer's belief be reasonable. *See Davis*, 430 F.3d at 352. Here, it was not objectively reasonable for Deputy Ritter to believe that a driver violated § 55-8-123 by slowly changing lanes under the

circumstances described in his testimony.[2] Because Deputy Ritter did not have probable cause to believe that he witnessed a violation of Tenn. Code Ann. § 55-8-123, the stop of the defendants was unlawful at its inception. We therefore need not consider whether the stop was unreasonably prolonged beyond its purpose.

### III. CONCLUSION

Because Deputy Ritter did not have probable cause to stop the defendants' vehicle, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

---

[2]Although this court has not directly decided whether an officer's good-faith mistake of law, as opposed to a mistake of fact, can support probable cause or reasonable suspicion to conduct a stop, *see United States v. Bias*, No. 3:08-cr-52, 2008 WL 4683217, at *8 n.3 (E.D. Tenn. Oct. 20, 2008) (citing *United States v. Westmoreland*, 224 F. App'x 470, 475 (6th Cir. 2007) (unpublished)), we note that the vast majority of our sister circuits to decide this issue have concluded that an officer's mistake of law, even if made in good faith, cannot provide grounds for reasonable suspicion or probable cause, because an officer's mistake of law can never be objectively reasonable. *United States v. McDonald*, 453 F.3d 958, 961-62 (7th Cir. 2006); *United States v. Tibbetts*, 396 F.3d 1132, 1138 (10th Cir. 2005); *United States v. Chanthasouxat*, 342 F.3d 1271, 1279 (11th Cir. 2003); *United States v. Twilley*, 222 F.3d 1092, 1096 (9th Cir. 2000); *United States v. Miller*, 146 F.3d 274, 279 (5th Cir. 1998); *accord United States v. Coplin*, 463 F.3d 96, 101 (1st Cir. 2006) ("Stops premised on a mistake of law, even a reasonable, good-faith mistake, are generally held to be unconstitutional."), *cert. denied*, --- U.S. ---, 127 S. Ct. 1320 (2007). *But see United States v. Washington*, 455 F.3d 824, 827 (8th Cir. 2006). As the Fifth Circuit explained,
> The rule articulated by the Supreme Court in *Whren* provides law enforcement officers broad leeway to conduct searches and seizures regardless of whether their subjective intent corresponds to the legal justifications for their actions. But the flip side of that leeway is that the legal justification must be objectively grounded.

*Miller*, 146 F.3d at 279 (citing *Whren*, 517 U.S. at 812-14) (footnote omitted). Other courts have noted that "[a]n officer cannot have a reasonable belief that a violation of the law occurred when the acts to which an officer points as supporting probable cause are not prohibited by law," *McDonald*, 453 F.3d at 961, because "failure to understand the law by the very person charged with enforcing it is *not* objectively reasonable," *Tibbetts*, 396 F.3d at 1138. Because we conclude that Deputy Ritter did not have an objectively reasonable belief that the defendants violated Tennessee law, we need not determine whether it is ever possible for an officer's mistake of law to be objectively reasonable.