**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0573n.06

No. 11-3107

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jun 05, 2012**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **ON APPEAL** FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | C O U R T   F O R   T H E |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| HARRY JAMES TERRELL, JR., | ) | |
| | ) | **O P I N I O N** |
| Defendant-Appellant. | ) | |

BEFORE: NORRIS, CLAY and GRIFFIN, Circuit Judges.

**ALAN E. NORRIS, Circuit Judge.** Defendant Harry Terrell, Jr., entered into a conditional plea agreement that preserved his right to appeal both the denial of two motions to suppress evidence of drugs and a firearm seized during a traffic stop and the denial of a motion to dismiss based on the lack of a timely probable cause determination. He raises both claims on appeal and also asserts that trial counsel rendered ineffective assistance. For the reasons that follow, we affirm the judgment.

**I.**

This prosecution had its genesis in a traffic stop made by Amherst, Ohio police officer Joshua McCoy in the early evening of May 28, 2009. According to his suppression hearing testimony,[1] McCoy was driving west on Route 2, which is a divided four-lane highway, in a single-officer patrol

---

[1] Defendant filed two motions to suppress evidence, resulting in two hearings. The first motion was limited to a challenge to the initial traffic stop. The second delved into events that occurred after the stop. Officer McCoy was the only witness at both hearings.

car. Around 8:45, he saw a white Cadillac traveling in the opposite direction. According to McCoy, "I noticed that the vehicle had extremely dark tinted windows which I . . . felt that were in violation of the Amherst codified ordinance." He had been trained to evaluate tint violations in various courses. In this case, the window, when tested, allowed an 18% pass-through of light; the ordinance at issue requires 50%.

McCoy began to follow the Cadillac. While trailing the Cadillac, the officer observed "three or four" lane violations. Once he turned on his cruiser lights, a dashboard camera was activated. Footage from that camera was introduced during both suppression hearings. After pulling the car over, McCoy told the driver, defendant Terrell, that he had been stopped for tint and marked lane violations. During the first suppression hearing, defense counsel contended that the traffic stop was pretextual because it was unlikely that Officer McCoy could have observed a tint violation from across a divided highway at dusk.

The district court denied the motion in a brief Memorandum and Order. It noted that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." (Order, Doc. 32 at 2 (quoting *Whren v. United States*, 517 U.S. 806, 810 (1996))). Although not quoted by the district court, the Supreme Court in *Whren* also observed that the case law forecloses "any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." *Id.* at 813. Moreover, this circuit has upheld stops based upon the officer's suspicion of a tint violation. *See, e.g.*, *United States v. Shank*, 543 F.3d 309, 313 (6th Cir. 2008).

The second motion to suppress, which was filed by new counsel, challenged the execution of the stop. Among other things, it sought suppression of all statements made by defendant along with the marijuana and firearm that were found in the automobile. That contraband resulted in the two counts of conviction: felon in possession of a firearm, 18 U.S.C. § 922(g)(1), and possession with intent to distribute marijuana, 21 U.S.C. § 841(a).

At the second hearing, McCoy reiterated his testimony about the events leading up to the traffic stop. He then explained that he approached the car on the passenger side because of heavy traffic. He saw two people in the car: defendant and his adult daughter. He explained the initial encounter in these terms:

> When I approached I noticed I could smell [the] raw odor of marijuana, one. Another thing I noticed was there was clothing that are held on the back windows, they were hanging from the roof of the car. There was several pieces of air fresheners or deodorizer, and there was also cell phones.

These observations led him to conclude that he "might have a drug courier." He asked defendant to get out of the car and began to question him. After getting his social security number, he asked him to have a seat in the rear of the cruiser. McCoy conducted a records check, which revealed that defendant's license had been suspended and that he had two active warrants. After informing defendant that he would be placed under arrest if the warrants were verified, McCoy began to ask further questions—specifically, if there were any weapons in the Cadillac. Defendant told McCoy that there was a loaded pistol in the car. McCoy also questioned defendant about drugs because "weapons and narcotics go hand in hand." Defendant conceded that there was marijuana in the car. Other than those two questions, McCoy testified that he did not interrogate defendant further.

McCoy also ran a records check on defendant's daughter; this inquiry indicated that she had an active warrant "through the Mentor [, Ohio] police department." Once this had been determined, McCoy summoned backup. When the backup officer arrived, defendant was handcuffed and his daughter was also placed in the back of the cruiser. McCoy then "conducted a probable cause search," which unearthed the pistol. Because there was no one who could validly drive the Cadillac, the officers had the car towed to the Amherst police department. Later that evening, they brought in a drug-detecting dog, which alerted when it approached the vehicle and led them to 31 pounds of marijuana.

After summarizing the testimony, the district court rendered the following oral opinion denying the motion:

> [S]o the question, first of all, for the Court is did the police have the authority, did Officer McCoy have the authority to place the defendant in the back seat of his vehicle based upon the information that he had at the time. So we have the busy State Route 2, obviously very noisy. It was drowning out a lot of what was being said. Cars and trucks back and forth.
>
> Was this sufficiently limited in time, was this the least intrusive means[?] We have an officer and two occupants of a vehicle, strong smell of marijuana, dangerous State Route 2, which the Court observed. Seized three cellular phones, several air fresheners, which any reasonable officer would find to be indicators of drug activity.
>
> . . . .
>
> Because of the drug indicators, the officer was certainly reasonable in asking whether he had a weapon, any guns. That is admissible. The marijuana question is not. And even if the government didn't stipulate to it, I would have refused to have that admitted. . . .
>
> . . . .
>
> [O]nce those [drug] indicators were there, there's probable cause to search. A warrant wasn't necessary. It is certainly not fruit of the poisonous tree.

(Hearing transcript, Doc. 80 at 81-85).

Three months after his motion to suppress was denied, defendant filed a *pro se* motion to dismiss the indictment because he was not afforded a probable cause determination before "significant pre-trial restraint" of his liberty. This motion was also denied.

Thereafter defendant entered a conditional guilty plea. He was sentenced to 180 months of incarceration and five years of supervised release.

**II.**

1.  Motions to Suppress Evidence

In reviewing the denial of a motion to suppress evidence, "we review the district court's findings of fact for clear error and its conclusions of law *de novo*." *United States v. Gross*, 550 F.3d 578, 582 (6th Cir. 2008). A factual finding is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been committed. *United States v. Smith*, 594 F.3d 530, 535 (6th Cir. 2010). "In reviewing the district court's findings of fact, we consider evidence in the light most favorable to the government." *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999).

We turn first to defendant's contention that the initial stop of his vehicle for tint violations was improper. "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. at 810. An officer's subjective intent when making the stop "play[s] no role in ordinary, probable-cause Fourth Amendment analysis." *Id.* at 813.

As mentioned earlier, the district court relied upon *United States v. Shank*, 543 F.3d 309 (6th Cir. 2008), when upholding the legality of the traffic stop. In *Shank*, the officers were on patrol during the afternoon in a high crime neighborhood and observed a Cadillac with what appeared to be illegally tinted windows. *Id.* at 311-12. The officers used a tint meter at the scene and determined that the windows were, in fact, illegal. *Id.* at 312. In upholding the stop, the district court applied a "reasonable suspicion" standard, *i.e.*, a *Terry* stop analysis, and concluded that the facts justified the stop. *Id.* at 313 (citing *Houston v. Clark Cnty. Sheriff Deputy John Does 1-5*, 174 F.3d 809, 813 (6th Cir. 1999)).

Defendant attempts to distinguish *Shank* from the facts of his case. Officer McCoy was patrolling in twilight and observed defendant's vehicle across a divided highway. Although it was later determined that the Cadillac's windows were overly tinted, McCoy did not test them at the scene. In defendant's view, McCoy used the pretext of tinted windows to justify a fishing expedition. While this court has recognized that "the officer must still have probable cause to make the initial stop, and must not abuse the *Whren* principle by using it as a subterfuge to justify the recovery of contraband after an illegal stop and search," *United States v. Freeman*, 209 F.3d 464, 467 (6th Cir. 2000) (Clay, J.,concurring), there is nothing to suggest that such a situation occurred here. The windows of defendant's vehicle, when tested, were in violation of the ordinance; the stop was valid.

The district court credited Officer McCoy's testimony that he smelled raw marijuana and observed both air fresheners and cell phones in the backseat of the automobile, all of which are indicators of drug trafficking. These observations gave Officer McCoy probable cause to search the

vehicle. In fact, this court has noted on various occasions that the odor of drugs in a vehicle is sufficient to establish probable cause to search that vehicle. *See United States v. Foster*, 376 F.3d 577, 583-84 (6th Cir. 2004); *United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir. 1993) ("[W]e find that Agent Perman's smelling the marijuana then constituted probable cause to believe that there was marijuana in the vehicle. Once this probable cause existed, a search warrant was not necessary."). Because Officer McCoy had probable cause to search the vehicle after his initial encounter with defendant, the defendant's later statement about the existence of a firearm is superfluous to our analysis.

2. Motion to Dismiss

In *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), the Supreme Court attempted to define precisely how long the Fourth Amendment allows an accused to be held in custody after a warrantless arrest before a judicial determination of probable cause is required. It concluded that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement." *Id.* at 56. Where no probable cause determination occurs within that time period, "the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *Id.* at 57.

What is the remedy for a *McLaughlin* violation? In *United States v. Fullerton*, 187 F.3d 587 (6th Cir. 1999), we found such a violation when the defendant was not brought before a magistrate for over 72 hours. Defendant in that case argued that suppression of evidence—a pager—was appropriate. We disagreed, holding instead that defendant "may follow the lead of numerous other victims of *McLaughlin* violations and file a *Bivens* claim." *Id.* at 592. That case is binding on this

panel. Defendant's remedy, if any, for the alleged delay is a *Bivens* action, not dismissal of the indictment.

3. Ineffective Assistance of Counsel

Defendant contends that his trial counsel provided ineffective assistance by failing to play the entire contents of Officer McCoy's dashboard camera during the first suppression hearing. Had he done so, it would have confirmed that the window tint was not tested at the scene. Typically, we review claims of ineffective assistance on direct appeal only in those "rare cases where the error is apparent from the existing record." *United States v. Lopez-Medina*, 461 F.3d 724, 737 (6th Cir. 2006); *see United States v. Wunder*, 919 F.2d 34, 37 (1990). Such claims are properly raised in a motion for post-conviction relief under 28 U.S.C. § 2255. *Massaro v. United States*, 538 U.S. 500, 504-05 (2003). We conclude that this does not constitute such a "rare case" and decline to reach this issue.

**III.**

The judgment is **affirmed**.