NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0657n.06

No. 12-5347

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Jul 17, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff - Appellee,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| NATHANIEL MAURICE PARKER | ) | |
| | ) | |
| **Defendant - Appellant.** | ) | |
| _____ | ) | |

Before:  ROGERS and KETHLEDGE, Circuit Judges; BORMAN, District Judge.[*]

**PAUL D. BORMAN, District Judge.**  On October 14, 2010, Nathaniel Maurice Parker

("Parker") was charged with one count of being a felon in possession of a firearm and ammunition

on August 24, 2010, in violation of 18 U.S.C. § 922(g)(1).  Prior to his trial, Parker filed a motion

to suppress the evidence against him, which the Government opposed.  The trial court referred the

motion to a Magistrate Judge, who held an evidentiary hearing on January 14, 2011, and filed a

Report and Recommendation denying Parker's motion on February 14, 2011.  The trial court adopted

the Magistrate Judge's Report and Recommendation in full over Parker's objections and denied

Parker's motion to suppress on March 21, 2011.

---

*The Honorable Paul D. Borman, United States District Judge for the Eastern District of Michigan,
sitting by designation.

Parker proceeded to a trial by jury on September 13, 2011, and was convicted of being a felon in possession of a firearm and sentenced to 110 months of incarceration followed by three years of supervised release. On March 26, 2012, Parker filed a timely Notice of Appeal, arguing that the trial court erred in denying his motion to suppress.

For the following reasons, the trial court's decision is **AFFIRMED**.

I.

During the late evening hours on August 24, 2010, Knoxville Police Officer Joshua Hurst was in his police vehicle on a routine patrol. At approximately 11:15 p.m., Officer Hurst was driving south on Harrison Street approaching the intersection of Harrison and Martin Luther King Jr. ("MLK") Avenue. Officer Hurst observed a vehicle, driven by Parker, exiting a gas station parking lot by turning left on MLK Avenue, then abruptly turning left again and accelerating south on Harrison Street. Officer Hurst testified that Parker's vehicle was "kind of straddling the, the yellow line" on MLK Avenue, and was going over the posted speed limit on Harrison. (R. 23, Hurst Testimony, Suppression Hr'g Tr. 6, Page ID # 60.) Although he did not use a radar gun to gauge the speed of the vehicle, and was unable to pace the vehicle due to a stop sign located at the intersection of Harrison and MLK, Officer Hurst testified that he was able to approximate the vehicle's speed at 35 miles per hour "based on [his] training and the way the vehicle was moving," which exceeded the posted speed limit of 30 miles per hour on Harrison Street. (*Id*. at 6-7, 28, Page ID # 60-61, 82.) Officer Hurst testified that he had been a Knoxville Police Officer for seven years, had conducted "several hundred" traffic stops, and had received training on estimating the speed of vehicles while standing on the side of the road. (*Id*. at 5, 49, Page ID # 59, 103.) Officer Hurst also testified that

he concluded the vehicle was speeding because it took him nearly two blocks to catch up to the vehicle after Officer Hurst had stopped at the stop sign.

Officer Hurst caught up to Parker's vehicle as Parker was slowing to make a left turn onto Wilson Avenue. After Officer Hurst activated his emergency lights, Parker immediately pulled his car onto the shoulder of Wilson Avenue.

Hurst testified that after he pulled over, Parker was "making a lot of extra movements and kind of reaching under the seat and bouncing around in the, in the seat of the vehicle." (*Id*. at 11, Page ID # 65.) Officer Hurst testified that Parker's movements "[were] not normal for someone being stopped on a, on a traffic stop[,]" and made Officer Hurst nervous. (*Id*. at 12, Page ID # 66.) Officer Hurst drew his firearm and ordered Parker to put his hands out the window. Parker complied.

Officer Hurst then asked Parker "why he was moving around so much and, and why he was driving so crazy." (*Id*. at 13, Page ID # 67.) In response, Parker "was . . . laughing quite a bit[,]" and seemed to say, "that's crazy," but was difficult to understand. (*Id*. at 13, 44, Page ID # 67, 98.) While Officer Hurst was speaking with Parker, Officer Hurst's beat partner, Officer Headrick, contacted Officer Hurst through his radio and asked if he was with Nathaniel Parker. At the Suppression Hearing, Officer Hurst provided the following testimony regarding this exchange:

> Q    Why did [Officer Headrick] have any reason to think that you
>      were out with Nathaniel Parker?
>
> A    When we do a traffic stop, we usually call in the license plate
>      of the vehicle. And we all have the ability to run license
>      plates in our, in our cruisers.

3

> Q    Okay.  So, could Nathaniel Parker hear that, that call come through?
>
> A    Yes, he could.
>
> Q    And did he actually respond to it?
>
> A    Yes, he did.
>
> Q    What, what did he say?
>
> A    He affirmed that, yes, he was Nathaniel Parker.

(*Id*. at 14, Page ID # 68.)

Parker gave Officer Hurst his driver's license and proof of insurance and stated that the vehicle was registered in his name.  Officer Hurst then returned to his police cruiser to perform a records check.  Officer Hurst testified that he returned to his cruiser because of "[t]he way [Parker] was acting when I first stopped him, you know, I just went to the back of my cruiser so that, you know, if something was wrong or if he had a firearm or something, that I would have some cover between me and him."  (*Id*. at 15, Page ID # 69.)

As Officer Hurst was performing the records check, Officer Headrick arrived in his police cruiser.  After Officer Headrick arrived, Parker again began moving around in his vehicle.  Officer Hurst drew his firearm and ordered Parker to stop moving around.  Parker then opened the driver's side door of his vehicle and fled down a nearby alley.

Officer Hurst testified that, when Parker got out of his vehicle, "[i]t appeared . . . that [Parker] was gripping the handle of a firearm and it appeared to be the, the shape of a slide under his shirt."  (*Id*. at 19, Page ID # 73.)  As Parker fled into the alley, Officer Hurst "hear[d] the distinct sound of metal clanging on to the paved part of the alley[,]" and he "saw Mr. Parker reach down and

4

attempt to pick something up as he was running." (*Id*. at 18, Page ID # 72.) Officer Hurst found a black Glock firearm lying in the alley.

Although Parker evaded Officers Hurst and Headrick, he was later apprehended. Officer Hurst performed a records check on the firearm found in the alley and determined that it had been stolen. Parker was charged with being a felon in possession of a firearm, reckless driving, driving on a suspended license, and theft. Officer Hurst testified that he charged Parker with reckless driving and not speeding because "[he] felt that the reckless driving charge encompassed all the traffic violations that [he] saw." (*Id*. at 30, Page ID # 84.)

In seeking to suppress the evidence against him, Parker argued that Officer Hurst lacked probable cause to stop his vehicle. At the evidentiary hearing on Parker's motion to suppress, Officer Hurst testified, and the Government also introduced a recording from Officer Hurst's in-car video on the evening of August 24, 2010.

Parker's counsel called to the stand Michael Chavis, an investigator with the Federal Defender Services of Eastern Tennessee, to impeach the testimony of Officer Hurst. Chavis testified that trees, a fence, and a house obstructed Officer Hurst's view of the gas station on the corner of Harrison Street and MLK Avenue, so that Officer Hurst could not have accurately determined whether Parker was driving recklessly when he exited the gas station and then abruptly turned onto Harrison.

The Magistrate Judge found Officer Hurst's testimony credible: "based on Officer Hurst's training, knowledge, and experience, Officer Hurst could reasonably conclude that [Parker] was speeding at a rate of five miles over the speed limit." (R. 24, Report and Recommendation at 20-21,

Page ID # 156-57.) The Magistrate Judge also credited Officer Hurst's testimony that, when he observed Parker's vehicle crossing the center line of MLK Avenue and then abruptly turn and accelerate down Harrison Street, Officer Hurst believed Parker was in violation of Tennessee traffic laws prohibiting reckless driving. The Magistrate Judge thus found that Officer Hurst had probable cause to stop Parker's vehicle based on his belief that Parker was speeding and driving recklessly. The Magistrate Judge further found that, even if Officer Hurst lacked probable cause to make the initial stop of Parker's vehicle, Parker's fleeing from the police during the traffic stop constituted an intervening act that purged the taint of the illegal seizure. The Magistrate Judge also reasoned that Parker abandoned the firearm in the alley as he fled, and could not claim any expectation of privacy in the firearm after he abandoned it.

Parker filed objections to the Magistrate Judge's Report and Recommendation, arguing that the evidence did not support the Magistrate Judge's finding of probable cause, and that Parker's fleeing during the traffic stop did not purge the initial taint of the seizure without probable cause. The trial court rejected Parker's objections and denied his motion to suppress, adopting the Magistrate Judge's report and recommendation in full. Parker then proceeded to trial, where he was convicted of being a felon in possession of a firearm pursuant to 18 U.S.C. § 922(g)(1). This timely appeal followed.

## II.

"In reviewing a district court's decision on a motion to suppress, we review factual findings for clear error and the application of the law to those finding de novo." *United States v. Keith*, 559 F.3d 499, 503 (6th Cir. 2009). A factual finding is clearly erroneous when "the reviewing court on

the entire evidence is left with the definite and firm conviction that a mistake has been committed."

*United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999). Because the district court

denied the motion in the instant matter, "we consider the evidence 'in the light most favorable to the

government.'" *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (quoting *United States

v. Wellman*, 185 F.3d 651, 654-55 (6th Cir. 1999)).

III.

Parker argues that Officer Hurst lacked probable cause to stop his vehicle. Parker further

argues that he did not commit a new, distinct crime when he fled before the traffic stop was

concluded, and finally, that he did not abandon the firearm.

A traffic stop is justified and does not violate the Fourth Amendment "when a police officer

has reasonable suspicion of an ongoing crime or a completed felony or when he has probable cause

to believe that a civil traffic violation has been committed." *Hoover v. Walsh*, 682 F.3d 481, 493

(6th Cir. 2012). The government contends that Officer Hurst had probable cause to stop Parker for

a traffic violation. It does not contend that Officer Hurst had reasonable suspicion of an ongoing

crime prior to stopping Parker's vehicle. The relevant standard applicable to this case is thus

whether Officer Hurst had probable cause to believe that Parker had committed a civil traffic

violation.

In *Whren v. United States*, 517 U.S. 806 (1996), the Supreme Court dealt with the issue of

"whether the temporary detention of a motorist who the police have probable cause to believe has

committed a civil traffic violation is inconsistent with the Fourth Amendment's prohibition against

unreasonable seizures unless a reasonable officer would have been motivated to stop the car by a

7

desire to enforce the traffic laws." *Id*. at 808. The unanimous Supreme Court opinion concluded that: "the District Court found that the officers had probable cause to believe that petitioners had violated the traffic code. That rendered the stop reasonable under the Fourth Amendment, [and] the evidence thereby discovered admissible . . . ." *Id*. at 819. In this case, the civil infractions supplied probable cause for the stop, and Officer Hurst was permitted to conduct a records check on Parker. While Officer Hurst was performing the records check, Parker fled, dropping and abandoning the gun at issue.

Parker asserts that it was error for the trial court to adopt the Magistrate Judge's Report and Recommendation concluding that Officer Hurst's testimony established probable cause for stopping Parker's vehicle.

The district court did not err in concluding that Officer Hurst had probable cause for stopping Parker for reckless driving based on a yellow line violation. We need not rule on the other ground for the stop, to wit, speeding. Further, because we conclude that there was probable cause for the stop, police misconduct did not cause Nicholson to drop the firearm and it is not necessary to address the Government's assertion that running from the stop created a separate and distinct crime.

Parker argues that probable cause for the traffic stop could not have been based on his allegedly reckless driving. He asserts that Officer Hurst's in-car video contradicts the claims that Parker was driving recklessly when he left the gas station and turned onto Harrison Avenue. Parker notes that "reckless driving" under Tennessee law requires "willful or wanton disregard for the safety of persons or property . . . ." Tenn. Code Ann. § 55-10-205. He also asserts that the in-car video shows that there was no oncoming traffic on either MLK Avenue or Harrison Street, nor were there

any pedestrians in the area. Furthermore, Parker argues that, even if he did cross into the oncoming traffic lane, he only did so for a brief moment. Parker claims that the brief period of time that he may have been straddling the lane is insufficient to establish probable cause for the traffic stop. He cites *United States v. Gross*, 550 F.3d 578 (6th Cir. 2008), which found no probable cause for a traffic violation under Tennessee law where "the vehicle straddled the [I-75] center lane for at least one hundred yards while changing lanes, which, when traveling at sixty-five miles an hour, amounts to just over three seconds." *Id*. at 584. The instant case was not about straddling lanes on a three-lane interstate highway, but about crossing the yellow line in the middle of a local road. Parker also cites *United States v. Freeman*, 209 F.3d 464 (6th Cir. 2000), which concluded that there was no probable cause to believe that a traffic violation had occurred based on "one isolated incident of a large motor home partially weaving into the emergency lane for a few feet and an instant in time . . . ." *Id*. at 466. That case dealt with a vehicle crossing a white line on the side of the road, not the yellow line separating the directions of traffic as in the instant case.

While it may be true that at trial, a jury or judge may have concluded that Parker's driving was not "reckless" under Tennessee law because it did not endanger any pedestrians, passengers, or other vehicles on the road, "the question is not whether a Tennessee court would have found [Parker] guilty of the traffic infraction, but whether the officer[] had probable cause to believe that a violation had occurred." *United States v. Johnson*, 242 F.3d 707, 709-10 (6th Cir. 2001). The Magistrate Judge found credible Officer Hurst's testimony that he believed a traffic violation was occurring, because when Parker exited the gas station onto MLK Avenue, he then abruptly turned, "straddling the . . . yellow line" (Suppression Hr'g Tr. 6, Page ID # 60), going to the "left of center or across the

center line" (*id*. at 8, Page ID # 62), and accelerated down Harrison Street. Officer Hurst also testified that the video camera shows Parker weaving into the wrong lane. (*Id*. at 33, 36 and 45, Page ID # 87, 90 and 99.) This Court has upheld a finding of probable cause on similar facts. *See United States v. Taylor*, 471 F. App'x 499, 511 (6th Cir. 2012) (holding that officers had probable cause to believe that traffic violations had occurred where the defendant was "speeding and abruptly crossing lanes to make turns in an apparent attempt to lose the vehicles that were following the minivan.").

Considering the evidence in a light most favorable to the government, Officer Hurst could have concluded that Parker was disregarding the safety of others by crossing and straddling the yellow line. The trial court therefore did not clearly err by adopting the Magistrate Judge's findings that Officer Hurst had probable cause to stop Parker for reckless driving.

IV.

The decision of the trial court is **AFFIRMED**.