**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0134n.06

Nos. 19-3121/3444

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
|  | ) | Mar 06, 2020 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR |
|  | ) | THE SOUTHERN DISTRICT OF |
| WILBERTO NEMROD SALAZAR (19-3121); | ) | OHIO |
| RAFAEL ALEJANDRO SOMARRIBA | ) |  |
| (19-3444), | ) |  |
|  | ) |  |
| Defendants-Appellants. | ) |  |

BEFORE: GIBBONS, McKEAGUE, and WHITE, Circuit Judges.

PER CURIAM. Wilberto Nemrod Salazar and Rafael Alejandro Somarriba appeal the denial of their motion to suppress evidence. As set forth below, we **AFFIRM**.

Salazar and Somarriba were travelling eastbound on Interstate 70 in a black Chevy Malibu when they exited the highway and parked in the commercial-vehicle area of a rest stop. Sergeant Timothy Williamson, a trooper with the Ohio State Highway Patrol, followed the Malibu into the rest stop and parked his cruiser directly behind the vehicle. After talking with Salazar and Somarriba, Sergeant Williamson called for a K-9 unit. The dog scratched at the Malibu, indicating the odor of narcotics, and a search of the vehicle uncovered nine bundles of heroin with a total approximate weight of 21.5 pounds.

A federal grand jury subsequently returned an indictment charging Salazar and Somarriba with possession with intent to distribute one or more kilograms of heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i).

Salazar filed a motion to suppress the heroin seized from the Malibu, asserting in relevant part that Sergeant Williamson lacked probable cause to stop the vehicle. Somarriba joined in the suppression motion. At the evidentiary hearing, Sergeant Williamson testified that several minutes before spotting the Malibu, he had received a call from another sergeant suggesting that he look out for a vehicle matching the Malibu's description. When the Malibu passed Sergeant Williamson's vehicle on Interstate 70, he pulled out of the crossover and began following it because it was moving slowly. He and his passenger, Officer Morehouse, then quickly recognized it as the vehicle he had been told to look for. Shortly after they began following it, Sergeant Williamson and Officer Morehouse observed the Malibu take the exit for the rest area "at the last minute" and cut across the solid lane lines marking the gore.[1] (R. 44, PageID 156).

The district court denied the suppression motion, concluding in relevant part that Sergeant Williamson had probable cause to believe that Salazar, the driver of the Malibu, exited the highway without first ascertaining that the movement could be made with safety, in violation of Ohio Revised Code § 4511.33(A). Salazar and Somarriba entered conditional guilty pleas, preserving their right to appeal the denial of the suppression motion. The district court sentenced Salazar to 34 months of imprisonment and three years of supervised release and Somarriba to 46 months of imprisonment and four years of supervised release.

---

[1] The gore is the triangular area between the highway and an exit ramp marked by V-shaped lines—one line continuing along the side of the highway and another line extending along the side of the ramp. (R. 44, PageID 157).

Salazar and Somarriba filed timely notices of appeal.  This court granted the government's motion to consolidate the appeals for briefing and submission and also granted Somarriba's motion to adopt Salazar's brief.  Defendants raise two challenges to the district court's denial of their suppression motion, arguing (1) that the district court committed legal error in relying on an Ohio Supreme Court opinion rather than binding circuit authority to decide the legality of the stop and (2) that the district court's factual findings regarding the stop are clearly erroneous.  In reviewing the denial of the suppression motion, we review the district court's factual findings for clear error and its legal conclusions de novo.  *United States v. Winter*, 782 F.3d 289, 295 (6th Cir. 2015).

"[S]o long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993); *see Whren v. United States*, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.").  Sergeant Williamson testified that he observed a traffic violation when the Malibu took the exit ramp for the rest stop "at the last minute" and cut across the solid lane lines marking the gore.  (R. 44, PageID 156). Under Ohio law, "[w]henever any roadway has been divided into two or more clearly marked lanes for traffic," a vehicle "shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."  Ohio Rev. Code § 4511.33(A)(1).  The district court concluded that Sergeant Williamson had probable cause to believe that Salazar exited the highway without first ascertaining that the movement could be made with safety and therefore violated Ohio Revised Code § 4511.33(A).

As an initial matter, the record is unclear as to whether a "stop"—that is, seizure within the meaning of the Fourth Amendment—occurred when Sergeant Williamson parked behind Salazar and Somarriba's Malibu and began questioning them. A police interation can transform from a consensual encounter into a seizure when "a reasonable person [would] have believed that he or she was not free to walk away." *United States v. Foster*, 376 F.3d 577, 584 (6th Cir. 2004) (alteration in original) (quotation omitted). In the context of parked vehicles, this court has held that a seizure occurs when a parked car and its occupants are "blocked" by a police cruiser. *United States v. Gross*, 662 F.3d 393, 399–400 (6th Cir. 2011); *United States v. See*, 574 F.3d 309, 313 (6th Cir. 2009). Here, though, Sergeant Williamson testified only that he "pulled directly behind" the Malibu. (R. 44, PageID 161). And it seems, from his testimony, that there was nothing in front of the Malibu. (*See id.*). Thus, a reasonable person in Salazar and Somarriba's position, seeing a police cruiser behind them and being asked to move from the commercial-vehicle area of the rest stop, may have felt free to leave in the face of Sergeant Williamson's continued questioning. But because both sides assume that a Fourth Amendment-triggering stop occurred when Sergeant Williamson pulled up behind the Malibu, we will proceed on that assumption.

Salazar and Somarriba argue that the district court committed legal error in relying on an Ohio Supreme Court opinion rather than binding circuit authority to decide the legality of the stop. Defendants contend that the district court's reliance on *State v. Mays*, 894 N.E.2d 1204 (Ohio 2008), was misplaced because that case involved an alleged violation of the single-lane rule rather than the lane-change rule and because the Ohio court required only reasonable suspicion that a traffic violation had occurred rather than probable cause. The district court cited *Mays* in response to defendants' reliance on *State v. Ross*, where an Ohio appellate court explained that the government "must present evidence 'that the driver of a vehicle moving either between lanes of

traffic or completely out of a lane of traffic failed to ascertain the safety of such movement prior to making the movement.'" 990 N.E.2d 1127, 1130 (Ohio Ct. App. 2013) (quoting *State v. Barner*, No. 04CA0004-M, 2004 WL 2535394, at *3 (Ohio Ct. App. Nov. 10, 2004)). This is what is required to sustain a conviction under Ohio Revised Code § 4511.33(A), not what is required to uphold the constitutionality of a traffic stop. *See Ross*, 990 N.E.2d at 1129-31. As the Ohio Supreme Court in *Mays* pointed out:

> [T]he question of whether appellant might have a possible defense to a charge of violating R.C. 4511.33 is irrelevant in our analysis of whether an officer has a reasonable and articulable suspicion to initiate a traffic stop. An officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge.

894 N.E.2d at 1208; *see also United States v. Collazo*, 818 F.3d 247, 255 (6th Cir. 2016) ("[T]he question whether probable cause existed to believe that there was a violation of the statute is different from whether a violation in fact occurred."); *Kinlin v. Kline*, 749 F.3d 573, 578 (6th Cir. 2014) ("Whether [the driver] actually 'ascertained that [his lane-change] movement [could] be made with safety,' *see* Ohio Rev. Code § 4511.33(A)(1), is irrelevant" where the officer "had a reasonable basis upon which to conclude that the movement was unsafe." (second and third alterations in original)). Contrary to defendants' arguments, the district court did not rely on the facts of *Mays* and did not apply the reasonable suspicion standard.

Salazar and Somarriba also argue that the district court erred in failing to follow *United States v. Gross*, 550 F.3d 578, 583 (6th Cir. 2008), in which this court held that the officer lacked probable cause to stop a vehicle for a lane-change violation under a similarly worded Tennessee statute. The facts of *Gross* are distinguishable. The officer in that case had described "essentially a slow lane change," and this court determined that, "[w]ithout some further allegation of erratic or improper driving, this simply is not within the scope of the statute." *Id*. at 583. In contrast,

Sergeant Williamson described "erratic or improper driving": the Malibu took the exit ramp for the rest stop "at the last minute" and cut across the solid lane lines marking the gore. (R. 44, PageID 156). The district court properly concluded that, under this factual scenario, Sergeant Williamson had probable cause to believe that Salazar exited the highway without first ascertaining that the movement could be made with safety, in violation of Ohio Revised Code § 4511.33(A).[2]

Salazar and Somarriba contend that Sergeant Williamson's testimony was not credible and that the district court clearly erred in accepting his testimony as true. "[W]e must give deference to the district court's assessment of credibility inasmuch as the court was in the best position to make such a determination." *United States v. Hill*, 195 F.3d 258, 264-65 (6th Cir. 1999).

According to defendants, Sergeant Williamson's testimony that he personally observed the alleged traffic violation cannot be reconciled with the testimony of Detective Marlo Morehouse, who was riding along with Sergeant Williamson that day. Detective Morehouse testified that she told Sergeant Williamson that she observed a violation and that the vehicle crossed over the pavement markings; her testimony is not inconsistent with Sergeant Williamson's personal observation of the violation. Defendants also argue that Sergeant Williamson was unable to offer a plausible explanation for failing to activate his dashcam recorder as he followed the Malibu and that the more likely explanation is that the omission was deliberate. The district court rejected this assertion, noting that defendants had not produced any evidence showing that Sergeant Williamson intentionally failed to activate the dashcam recorder and that there were "a variety of reasons" that could explain his failure to do so. Finally, defendants contend that a private investigator's video

---

[2] Because the district court properly determined that Sergeant Williamson had probable cause to believe that the Malibu violated Ohio Revised Code § 4511.33(A), we need not address the government's alternative argument that the vehicle's parking violation—parking in the area of the rest stop designated for commercial vehicles—provided an independent basis for probable cause justifying the stop.

recording proves that Sergeant Williamson could not have observed the alleged traffic violation from his vantage point about a quarter of a mile behind the Malibu. The private investigator testified that he saw the gore lines "[j]ust as I'm coming up on it as I'm starting to get off the—to the ramp to the rest area." (R. 44, PageID 350). The private investigator went on to acknowledge that his testimony and video recording did not preclude the possibility that the officers saw a lane violation, stating, "I wasn't there so I don't know what they saw." (*Id*. PageID 352). When asked if the officers could have seen a lane violation, the private investigator responded, "Could have. Could not have. I can't say." (*Id*.). Defendants have therefore not shown that the district court's credibility determination was clearly erroneous.

For these reasons, we **AFFIRM** the district court's denial of the suppression motion.