**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0406n.06

No. 19-6330

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jul 14, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff–Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| JONATHAN SHELTON, | ) | |
| | ) | **OPINION** |
| **Defendant–Appellant.** | ) | |

BEFORE: MOORE, CLAY, and MURPHY, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** On April 23, 2017, convicted felon Jonathan Shelton attended a Memphis-area gun show with his mother and a few friends. While there, Shelton caused a disturbance and was ejected from the premises. Detective Jarrett Parks, who was assigned to work the event, then saw Shelton hand some cash to his mother, and, later, get into a car with her, as she was carrying a newly purchased firearm. Notably, too, to Detective Parks's eye, the car's windows seemed darker than Tennessee law permitted. *See* Tenn. Code Ann. § 55-9-107(a)(1) (prohibiting Tennessee drivers from operating "any motor vehicle in which any window . . . [h]as a visible light transmittance of less than thirty-five percent (35%)").

Detective Parks relayed this information to a colleague, Detective Mario Tate, who promptly located the vehicle on a nearby highway. And Detective Tate, who had over ten years' worth of experience enforcing window-tint violations, concurred in Detective Parks's assessment: the car's windows appeared illegally tinted. R.126 (Suppression Hr'g Tr.) (Page ID #465).

So Detective Tate pulled the vehicle over, performed a roadside "field comparison test with a digital tint meter," and, sure enough, discovered that the driver's-side window had a visible light transmittance of only 21%, significantly below the legal limit. *Id.* Worse yet, while performing the field comparison test, Detective Tate spotted "a weapon in the back floorboard and . . . noticed the smell of marijuana," which provided him probable cause to search the vehicle further. *Id.* at Page ID #466. And, unfortunately for Shelton, that search revealed more guns, and drugs, too. R.154 (PSR ¶ 4) (Page ID #550).

Arrest and federal prosecution (for being a felon-in-possession-of-a-firearm) followed. In response, Shelton moved to suppress the firearms found in the vehicle, arguing that the traffic stop violated the Fourth Amendment because "[n]o reasonable person" could have believed that the car's windows were illegally tinted. R.98 (Mot. to Suppress) (Page ID #394).[1] But after holding a hearing, at which both Detective Parks and Detective Tate testified as to the events set forth above (without any cross-examination or contrary presentation from Shelton's counsel), the magistrate judge denied Shelton's motion, finding both officers credible. *United States v. Shelton*, No. 18-cr-20056, 2019 WL 3417369, at *2 (W.D. Tenn. Apr. 1, 2019). The district court followed suit. *United States v. Shelton*, No. 2:18-cr-20056, 2019 WL 2563821 (W.D. Tenn. June 21, 2019). Shelton then pleaded guilty, received a 100-month prison sentence, and filed this appeal, raising, again, just the window-tint issue.

The Supreme Court has held that when a police officer has "probable cause" to believe that a driver has violated traffic law, the officer may stop the driver without running afoul of the Fourth

---

[1]Shelton did not challenge any other aspect of Detective Tate's search.

Amendment; this is true even if the officer is *actually* motived by some other purpose, such as investigating an unrelated crime. *Whren v. United States*, 517 U.S. 806, 810, 812 (1996). And in the context of "ongoing" traffic violations—like a blocked license plate or, more relevantly, an overly tinted window—we have held, and the parties agree,[2] that the less demanding "reasonable suspicion" standard applies. *United States v. Simpson*, 520 F.3d 531, 541 (6th Cir. 2008). In turn, then, we have held that an officer reasonably suspects a window-tint violation if the officer is "familiar[]" with their state's tint law and "estimate[s] that [a] vehicle [is] tinted substantially darker than" that law permits. *United States v. Shank*, 543 F.3d 309, 313 (6th Cir. 2008) (affirming denial of motion to suppress); *see also United States v. Terrell*, 483 F. App'x 161, 164–65 (6th Cir. 2012) (same).

*Shank* decides this case. Detective Tate testified, credibly, in the magistrate judge's view, that he has a decade's worth of experience enforcing Tennessee's window-tint law, and that, based on that experience, he believed the car Shelton was riding in had windows tinted substantially below Tennessee standards. And, if that weren't enough, the positive field test and Detective Parks's testimony confirmed the reasonableness of Detective Tate's suspicion.

Shelton's only argument on appeal—that the government needed to supplement this showing with yet more evidence, like photographs of the car's exterior—is unavailing. Not only does this point fail to come to grips with *Shank*, which specifically held that the kind of testimony Detective Tate offered here suffices for reasonable-suspicion purposes, but also Shelton offers no

---

[2]For this reason, to the extent confusion remains on the subject, *see, e.g.*, *United States v. Taylor*, 471 F. App'x 499, 510–11 (6th Cir. 2012), we need not consider it here. *See Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (applying reasonable-suspicion standard in Fourth Amendment traffic stop case because "[a]ll parties agree[d]" on the issue).

reason to think that photographs of the car's exterior would have disproved what the officers' eyes, and the objective tint meter, plainly observed:  that the car's windows were illegally tinted.

Consequently, we **AFFIRM** the district court's denial of Shelton's motion to suppress.